UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| MAINE PEOPLE'S ALLIANCE and <br> NATURAL RESOURCES DEFENSE <br> COUNCIL, INC., <br><br> Plaintiffs, <br><br> v. <br><br> HOLTRACHEM MANUFACTURING <br> COMPANY, LLC, and <br> MALLINCKRODT INC., <br><br> Defendants. | ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> )   CV-00-69-B-W <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) |

**ORDER ON MOTION TO MODIFY ORDER OF SPECIAL MASTER**

On April 21, 2009, Mallinckrodt LLC submitted several requests to Special Master Susan Calkins; she denied them all in a written order, dated May 14, 2009. *Mem. and Order of Special Master* (Docket # 464) (*May 14 Order*). Mallinckrodt now moves to modify that denial on an expedited basis. *Def. Mallinckrodt LLC's Mot. to Modify Order of Special Master* (Docket # 465) (*Def.'s Mot.*). Mallinckrodt generally contends that the mechanism Judge Gene Carter and this Judge devised to determine the necessity and feasibility of mercury remediation in the Penobscot River may ultimately violate due process. Agreeing with Special Master Calkins that Mallinckrodt failed to establish its entitlement to the remedies it seeks, the Court denies the motion.

**I.   STATEMENT OF FACTS**

   **A.   Background**

Almost seven years ago, Judge Carter found that Mallinckrodt Inc.[1] violated the Resource

---

[1] According to a supplemental disclosure statement filed in accordance with Rule 7.1, Mallinckrodt Inc. "no longer exists as a corporate entity, its corporate assets and liabilities having been transferred to Mallinckrodt LLC."

1

Conservation and Recovery Act, 42 U.S.C. § 6901 *et seq.*, by discharging mercury directly into the Penobscot River and is "liable to fund the cost of a necessary independent study to determine if remediation . . . is required and/or feasible and, if so, the precise content of the appropriate remediation plan."[2] *Me. People's Alliance v. Holtrachem Mfg. Co.*, 211 F. Supp. 2d 237, 255 (D. Me. 2002). To implement the independent study, Judge Carter invited the parties to nominate a member of a Study Panel, which he directed to conduct specific investigations and answer specific questions. *Implementing Order for Penobscot River Study Pursuant to Mem. of Dec. and Order Dated July 29, 2002* (Docket # 159) (*2003 Implementing Order*).[3] The parties nominated one member (neither party objected to the other's nominee), these two members nominated a chairperson (to whom neither party objected), and the Court appointed all three to the Study Panel. *Order Appointing Study Panel Members Nominated by the Parties* (Docket # 166); *Order Appointing Study Panel Chairperson* (Docket # 169). The Court then appointed the members of the Study Panel as Special Masters pursuant to Rule 53(a) of the Federal Rules of Civil Procedure. *Order Appointing Special Masters* (Docket # 200) (*Order Appointing Study Panel*).

Although the order appointing the Study Panel members as Special Masters contained some details regarding the operations of the Study Panel, it referred to the more detailed 2003

---

*Supplemental Corporate Disclosure Statement* (Docket # 367). This probably explains why the movant's attorneys identify the movant as "Defendant Mallinckrodt LLC" and themselves as "Attorneys for Defendant Mallinckrodt LLC." *Def.'s Mot.* at 1, 15. In the event the caption in this case should be amended to replace "Mallinckrodt Inc." with "Mallinckrodt LLC", the parties are encouraged to move jointly for such an amendment. *See Johnson v. Lucent Techs. Inc.*, 285 Fed. Appx. 854, 854 n.1 (3d Cir. 2008) (amending caption to name initial defendant's successor in interest); *Gillespie v. First Interstate Bank of Wis.*, 717 F. Supp. 649, 651 n.1 (E.D. Wis. 1989) (same).

[2] Judge Carter also entered default judgment against Mallinckrodt Inc.'s co-defendant, Holtrachem Manufacturing Company, LLC, "to be jointly and severally liable with Defendant Mallinckrodt, Inc. for the funding of the independent study." *Me. People's Alliance*, 211 F. Supp. 2d at 256.

[3] The 2003 Implementing Order was amended on April 20 and July 1, 2004. *Order Amending Implementing Order for Penobscot River Study Pursuant to Mem. of Dec. and Order Dated July 29, 2002* (Docket # 172); *Second Order Amending Implementing Order for Penobscot River Study Pursuant to Mem. of Dec. and Order Dated July 29, 2002* (Docket # 199). The July 1 amendment dealt solely with the issue of *ex parte* contacts, and was based entirely on a joint submission by parties. *May 25, 2004 Ltr. from Mitchell S. Bernard to Judge Carter* (Docket # 193). Reference herein to the 2003 Implementing Order means the 2003 Implementing Order as amended.

Implementing Order as a complete description of the Study Panel's duties.  *Id.*  The 2003 Implementing Order in turn referred to a procedural order of even date that outlined how the parties, the Study Panel, and the Court would resolve disputes.  *Procedural Order* (Docket # 160).[4]  Accordingly, the 2003 Implementing Order, the Procedural Order, the Order Appointing Study Panel, and Rule 53 together define the Study Panel, its mission, operations, powers, and relationship to the parties and the Court.  On October 17, 2008, the Court appointed Special Master Calkins to oversee the independent study and to recommend, "if necessary and feasible, a plan for remediation of the mercury contamination in the Penobscot River."  *Order of Reference* (Docket # 434) (*Order Appointing Overseer*).

    **B.**    **Mallinckrodt's Concerns**

In its expedited motion to modify Special Master Calkins's Order, Mallinckrodt requests three forms of relief:  (1) order the Study Panel to preserve all documents that comprise the raw data underlying the Panel's work; (2) order the Study Panel to transcribe or record the remediation workshop, held on June 23 and 24, 2009, and similar gatherings in the future; and, (3) clarify the relationship among the Court, the Study Panel, and Special Master Calkins in anticipation of future proceedings.  *Def.'s Mot.* at 1; *Def. Mallinckrodt LLC's Reply Br. in Supp. of its Mot. to Modify Special Master's Order* (Docket # 471) (*Def.'s Reply*).  Mallinckrodt asserts that these measures are necessary to guard against potential deprivations of due process in the event the Court, in reliance on the Study Panel's and/or Special Master Calkins's recommendations, further enjoins Mallinckrodt to clean up the Penobscot River.

---

[4] Like the 2003 Implementing Order, the Procedural Order was also amended on April 20.  *Order Amending Implementing Order for Penobscot River Study Pursuant to Mem. of Dec. and Order Dated July 29, 2002* (Docket # 172).  Reference to the Procedural Order means the Procedural Order as amended.

### C. Plaintiffs' Response

Plaintiffs oppose Mallinckrodt's motion "in all respects." *Pls.' Resp. to Def.'s Mot. to Modify Order* at 1 (Docket # 470) (*Pls.' Resp.*). They first contend that the May 14 Order consists entirely of Special Master Calkins's rulings on procedural matters, which the Court may set aside "only for an abuse of discretion." *Pls.' Resp.* at 2 (citing Fed. R. Civ. P. 53(f)(5)). Plaintiffs then address *seriatim* Mallinckrodt's requests and explain why the Court should refuse to disturb the Special Master's rulings. Plaintiffs remind the Court that roughly one year ago Judge Carter denied a Mallinckrodt motion for access to data underlying the recommendations of the Study Panel. They claim Mallinckrodt's request for a document retention directive is, at best, a request to modify Judge Carter's Order appointing the Study Panel as Special Masters. *Pls.' Resp.* at 2-3. Plaintiffs also oppose Mallinckrodt's request for a verbatim record of Study Panel meetings on the ground that such monitoring would, according to members of the Panel, inhibit the free flow of ideas necessary to maintain its independence from the parties and a foundation of sound science. *Id.* 3-4. Finally, with respect to clarification of the relationship among the Court, the Study Panel, and Special Master Calkins, Plaintiffs assert this request is premature to the extent it bears only on the conduct of future proceedings, the occurrence of which is a matter of speculation. Characterizing Mallinckrodt's first two requests as evidence of a desire to ensure an adequate record, Plaintiffs note that although they "share [Mallinckrodt's] interest in an adequate record, they do not share Mallinckrodt's suspicion that an adequate record is not being kept." *Pls.' Resp.* at 6.

## II. DISCUSSION

### A. Setting Aside the Special Master's Order

Pursuant to Rule 53, "[u]nless the appointing order establishes a different standard of review, the court may set aside a master's ruling on a procedural matter only for an abuse of discretion." Fed. R. Civ. P. 53(f)(5). The Court's Order appointing Special Master Calkins does not establish a different standard of review; to the extent the May 14 Order addresses procedural matters, the Court will review them for an abuse of discretion.[5] At the same time, "[t]he subordinate role of the master means that the trial court's review for abuse of discretion may be more searching than the review that an appellate court makes of a trial court." Fed. R. Civ. P. 53 advisory committee's note, 2003 amendments; *see Crowley v. Chait*, No. 85-2441 (HAA), 2005 U.S. Dist. LEXIS 2741, at *11 (D.N.J. 2005).

### B.  Preservation of Original Data Documents Generated by the Panel

In Judge Carter's appointing order, he required the members of the Panel to maintain the evidence they deem necessary for judicial review of its Study Plan and recommendations. *Order Appointing Study Panel* at 2 ("The Special Masters shall preserve and file only such evidence or documents as they deem necessary for this Court's review of their Study Plan and recommendations, pursuant to Rule 53(b)(2)(C)."). Mallinckrodt initially requested that Special Master Calkins order the Panel to provide it with the Panel's "raw data" and original "data packages" so that its scientists could better understand the Panel's conclusions. *Mallinckrodt's April 21, 2009 Letter Request* (Docket # 464-2). Special Master Calkins noted that the Court previously denied a substantially similar request. *May 14 Order* at 3 (citing *Order Denying Def.'s Mot. to Ensure Preservation of and Access to Data and to Obtain Original Data Packages* (Docket # 412). Reasoning that circumstances regarding the data had not changed, she denied Mallinckrodt's request. *Id.*

---

[5] Mallinckrodt did not argue for a more stringent standard of review in its reply.

In its motion, Mallinckrodt retreats from its request for access, and asks only that the Panel be ordered to retain its original data documents, which include, at a minimum, "written sampling protocols, field notes, laboratory analytical packages, and chain of custody forms." *Def.'s Mot.* at 7. Mallinckrodt does not allege that the Panel is not retaining these documents; it speculates that "[i]f the original data documents are lost or destroyed, the parties will be deprived of their right to fully evaluate and challenge the data and any conclusions based on the data."[6] *Id.* at 10. The Plaintiffs respond by referring back to the appointing Order and noting they have no reason to conclude that the Panel is violating the Court's directive to preserve vital data. *Pls.' Resp.* at 3. At the same time, the Plaintiffs and Mallinckrodt seem to agree that the Panel should maintain "an adequate record to allow later judicial review." *Id.* at 6.

Mallinckrodt does not explicitly state why almost five years after the issuance of the Order appointing the Panel members and mandating preservation of necessary data, it is newly concerned about whether the Panel is complying with the Court's directive. Absent some concrete suggestion of non-compliance, the wisdom of Judge Carter's order seems apparent, since it places the judgment about what should and should not be preserved and how it should be preserved in the hands of the scientists who are charged with doing the work. After all, the Panel consists of preeminent scientists the parties themselves selected; it is neither an amateur nor an advocacy group. No doubt, the Panel has generated volumes of data and Judge Carter presciently determined that they, not the Court and not the lawyers, would be in the best position

---

[6] In support of its position, Mallinckrodt cites *Innis Arden Golf Club v. Pitney Bowes, Inc.*, No. 3:06cv1352 (JBA), 2009 U.S. Dist. LEXIS 43588 (D. Conn. May 21, 2009). *Def.'s Mot.* at 8. In *Innis Arden*, the Court determined that the plaintiff's disposal of soil samples that yielded favorable evidence deprived the defendants of the opportunity to conduct their own tests on those samples. As a discretionary sanction for the plaintiff's spoliation of the samples, the Court precluded the plaintiff from using evidence derived from the disposed samples at trial. *Innis Arden*, 2009 U.S. Dist. LEXIS 43588, at *24-33. *Innis Arden* is a spoliation of evidence case, not a constitutional law case, and its applicability to Mallinckrodt's "due process" argument is not immediately apparent. *See Mendez v. Village of Tinley Park*, No. 07 C 6498, 2008 U.S. Dist. LEXIS 11033, at * 7 (N.D. Ill. Feb. 14, 2008) (noting that spoliation of evidence is not a constitutional claim); *Holmes v. Amerex Rent-A-Car*, 710 A.2d 846, 849 (D.C. 1998) (recognizing that spoliation of evidence sounds in tort).

to know what to preserve. The Court is loath to wade into the Panel's day-to-day operations, to second-guess their interim judgments, and to invite what would likely be an endless and unproductive debate about what is and is not scientifically significant.

On the other hand, the Court agrees with the parties that under Judge Carter's Order, the Panel is obligated to retain sufficient evidence of their work so that it can be properly judicially reviewed. The Court will forward a copy of this Order to the members of the Panel to alert them that the parties are concerned about their retention of data and to remind them that Judge Carter's earlier Order regarding the need to preserve essential data remains effective.

### C. Verbatim Records of Panel Meetings

Mallinckrodt initially requested that its experts be allowed to attend Panel meetings. *Mallinckrodt's April 21, 2009 Letter Request* at 5. Citing the Panel's objection that Mallinckrodt's experts' presence would inhibit the free flow of ideas, Special Master Calkins denied the request. *May 14 Order* at 4-6. For the same reason, she also denied a related request for some form of verbatim records of the meetings. *Id.* Mallinckrodt fails to convince the Court that Special Master Calkins abused her discretion when she denied its motion for verbatim records. Without authority, Mallinckrodt claims a due process right to access records of the Panel's substantive discussions with third parties. *Def.'s Mot.* at 10. Mallinckrodt appears to be concerned that the Panel will communicate with a third-party scientist, that Mallinckrodt will not know the substance of the communication, and that Mallinckrodt will suffer prejudice on account of its ignorance. *Id.* These fears, based on *Watermeier v. Watermeier*, 462 So. 2d 1272, 1274 (La. Ct. App. 1985), are unfounded. Unlike *Watermeier*, where the Judge's decision in a custody hearing could have rested entirely on an unrecorded, unmonitored conversation with the child,

here the Panel's ultimate recommendations must rest entirely on scientific data to which Mallinckrodt's experts will have access.

### D. *Ex Parte* Contacts, Clarification of Roles, and Conduct of Future Proceedings

In its April 21, 2009 letter, Mallinckrodt asked Special Master Calkins to avoid substantive *ex parte* contacts with the Panel. *Mallinckrodt's April 21, 2009 Letter Request* at 6. Special Master Calkins explained that she has had no such contacts. *May 14 Order* at 6-7. This should end the issue. The Court's Order appointing Special Master Calkins allows her to have *ex parte* contacts with the Panel, *Order Appointing Overseer* ¶ III.f, and with the assurance that she has confined and will continue to confine those contacts to necessary logistical matters, the Court sees no reason to alter the Order of appointment.

Mallinckrodt also asked Special Master Calkins to impose limits on the Panel members' ability to have *ex parte* contacts with third parties. *Mallinckrodt's April 21, 2009 Letter Request* at 6. Mallinckrodt reasoned that such restrictions would not be necessary, however, if the Panel members were considered court-appointed experts "as Mallinckrodt believes they should be." *Id.* Noting that the members of the Panel were appointed as Special Masters pursuant to Rule 53, Special Master Calkins declined to clarify or amend their role absent a clear need to do so (e.g., a need to determine whether they are subject to examination to discover the evidentiary foundation of their recommendations). *May 14 Order* at 9. In its motion to modify, Mallinckrodt persists in its position that whether the Panel members are Special Masters or Court-appointed experts is an open question, and that the answer affects their ability to have *ex parte* contacts with third parties. *Def's. Mot.* at 14; *see Def.'s Reply* at 2 (suggesting that Panel members' substantive conversations with third-party consultants be recorded).

The Court does not agree. Judge Carter explicitly appointed them as Special Masters pursuant to Rule 53. The record is adequate to inform Mallinckrodt of the procedural consequences of such an appointment. *See 2003 Implementing Order* at 5 (allowing the Panel to "seek out and consult other sources of information relevant to its undertaking as it sees fit to do so"); *Procedural Order*; *Order Appointing Study Panel*; *Order Approving Phase I Report* (Docket # 390) (adopting recommendations of the Study Panel following comment and objection by the parties based on a determination that the Panel's analysis and findings "are of sufficient weight and evidentiary impact" to support its conclusions). The Court declines Mallinckrodt's invitation to revisit the Court's Implementing Order or Order appointing the Study Panel or to prevent the Study Panel from freely gathering relevant information from outside sources not subject to any Court Order on *ex parte* contacts.

### III. CONCLUSION

The Court DENIES Defendant Mallinckrodt LLC's Motion to Modify Order of Special Master (Docket # 465).[7] The Court ORDERS that the Clerk provide copies of this Order to the members of the Penobscot River Mercury Study Panel.

SO ORDERED.

/s/ John A. Woodcock, Jr.
JOHN A. WOODCOCK, JR.
CHIEF UNITED STATES DISTRICT JUDGE

Dated this 25th day of June, 2009

---

[7] The Court also DENIES Defendant Mallinckrodt LLC's Motion for Oral Argument and Expedited Ruling on its Motion to Modify Order of Special Master (Docket # 466).