UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MAINE

| | |
|---|---|
| MAINE PEOPLE'S ALLIANCE and NATURAL RESOURCES DEFENSE COUNCIL, INC., <br><br>  Plaintiffs, <br><br> v. <br><br> HOLTRACHEM MANUFACTURING COMPANY, LLC and MALLINCKRODT US LLC, <br><br>  Defendants. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) )  1:00-cv-00069-JAW |

**ORDER FOR EVALUATION OF POTENTIAL ACTIVE REMEDIES**

The Court **ORDERS** as follows:

1. There will be an immediate, thorough, open, and independent identification and evaluation of potential active remedies to speed the recovery of the Penobscot River estuary from its present state of mercury contamination ("Evaluation of Potential Active Remedies"). The Evaluation of Potential Active Remedies will be designed to identify feasible, effective, and cost-effective remedies to achieve the objectives set forth in the Court's opinion dated September 2, 2015 and the Resource Conservation and Recovery Act. The Evaluation will focus in particular on the region from the site of the former Veazie Dam south to Upper Penobscot Bay, including Mendall Marsh and the Orland River ("Penobscot Estuary").

2. Pursuant to Federal Rule of Civil Procedure 53, the Court will either retain the current Special Master or appoint a new Special Master. Under the supervision of the Court, the Special Master will oversee the process for the Evaluation of Potential Active Remedies.

3. The Court will, as promptly as possible, engage a suitable engineering firm to identify and evaluate potential remedial options for addressing mercury contamination in the Penobscot Estuary. The Special Master will manage the process of selecting the engineering firm, facilitate meetings between the selected engineering firm and others, and address issues that may arise leading up to the production of the engineering firm's report to the Court.  The Special Master will inform the engineering firm selected that it may not be eligible to implement any remedy for the Penobscot River.

4. The Court will engage an engineering firm by January 6, 2016. To assist in the selection of an engineering firm, the parties will, through retained experts, prepare and submit to the Special Master a proposed joint Scope of Work for the investigation of remedial alternatives not later than October 30, 2015. The proposed Scope of Work the parties will provide will include a request to identify a specific person from the engineering firm to serve as the Project Manager. To the degree the parties cannot reach agreement on a proposed Scope of Work by October 30, 2015, they will submit by that date separate proposed Scopes of Work for the Special Master to consider. The Special Master will review the proposed Scope(s) of Work and distribute a final Scope of Work not later than November 6, 2015.  By October 30, 2015, the parties will confer and attempt to reach consensus on qualified firms that will receive the Scope of Work.  After conferring, the parties will provide to the Special Master a list of engineering firms that should receive the Scope of Work. Engineering firms or consultants previously retained or employed by any of

the parties to this litigation or their predecessors in interest shall be precluded from consideration. If the parties cannot agree on a list of firms that should receive the Scope of Work, each party will recommend a list of firms to the Special Master.

   5.   The Special Master will provide the Scope of Work and request for qualifications and rates to perform the work to engineering firms under consideration. Responses and bids from engineering firms will be required not later than December 14, 2015. After receipt of the engineering firms' qualifications and rates, the parties will have an opportunity to review this information and provide comments and recommendations to the Special Master regarding which firm should be selected. The Special Master and the parties will interview selected bidders. The parties will attempt to agree on the engineering firm that should be retained and will, either jointly or separately, propose to the Special Master an engineering firm for selection. The Special Master will then recommend to the Court one or more engineering firms, not later than December 23, 2015. The Court will select the engineering firm best qualified to perform the work in a high-quality, timely, and cost-effective manner. The Court will appoint or engage the selected firm not later than January 6, 2016.

   6.   Neither the parties nor their agents, attorneys, or employees may have any *ex parte* communications with the Special Master, the retained engineering firm, or any engineering firm under consideration to be retained.

   7.   Any Scope of Work adopted by the Special Master and used to retain and guide an engineering firm is subject to amendment by the Special Master, upon approval by the Court, as circumstances warrant.  Either party may request an amendment to the Scope of Work.  The Special Master or the Court will decide whether to approve such requests.

8. Promptly following retention of an engineering firm, the Special Master may convene a meeting or meetings between the firm and the original Court-appointed Study Panel, the Study Panel's scientific contractors, or others that the engineering firm selects. The parties or their representatives may participate in these meetings, at the discretion of the Special Master.  The purpose of these meetings will be to share existing information and ideas to inform the development of remedial alternatives to be evaluated by the engineering firm retained by the Court. The Court expects these meetings will take place in time to commence any fieldwork related to the Evaluation of Potential Active Remedies by the spring of 2016.

9. Following the initial meetings described above, the Special Master, in consultation with the retained engineering firm, will set a schedule and a budget for expeditiously and efficiently completing the work needed for the engineering firm to formulate and prepare an Evaluation of Potential Active Remedies for submission to the Court. This will include but not be limited to: (a) developing a suite of potential active remedies for the engineering firm to evaluate; (b) obtaining necessary permits for and performing any fieldwork (including both data collection and pilot testing) needed to support the firm's evaluation of those alternatives; and (c) preparing a report to the Court summarizing the engineering firm's work and endorsing a remedial plan or plans, or explaining why, in the firm's expert judgment, there is no viable remedy. The retained engineering firm will have authority to subcontract any fieldwork or other research that it deems necessary to prepare the Evaluation of Potential Active Remedies, as approved by the Court. The engineering firm may consult with the Study Panel and other scientists who participated in the prior Court-ordered studies, as it deems appropriate.

10. The Special Master will arrange for the engineering firm to provide monthly updates to the parties, either in writing or through conference calls. The Special Master will, after consultation with the parties regarding an appropriate process, provide access to all information and data collected in the Evaluation of Potential Active Remedies in a timely manner. The Special Master will also convene quarterly information-sharing meetings between the Special Master, the engineering firm, and representatives of the parties. The Special Master has authority to adjust the frequency and nature of communications and information-sharing with the parties as he or she deems necessary.

11. At the end of the Evaluation of Potential Active Remedies, the engineering firm will submit a written report, recommending to the Court a remedial plan or plans that would be effective and cost-justified, or explaining why there is no viable remedy to pursue.

12. Once the engineering firm submits its report, the Court will evaluate its contents, allow the parties to object to its recommendations, and resolve any disputes about the recommendations and their implementation.

13. Defendant Mallinckrodt US LLC will, through the Court, fund the cost of the remedial evaluation directed in this Order, following the same procedure and protocol used to fund the Court-ordered study that preceded and prompted the June 2014 remedy trial, and shall make advance payments to a Court-ordered account as directed by the Special Master upon receipt of a quarterly budget from the retained engineering firm.

14. The Court retains jurisdiction to oversee the implementation of this Order.

SO ORDERED.

                                <u>/s/ John A. Woodcock, Jr.</u>
                                JOHN A. WOODCOCK, JR.
                                UNITED STATES DISTRICT JUDGE

Dated this 16th day of October, 2015