UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| MAINE PEOPLE'S ALLIANCE and NATURAL RESOURCES DEFENSE COUNCIL, INC., <br><br> Plaintiffs, <br><br> v. <br><br> HOLTRACHEM MANUFACTURING COMPANY, LLC, and MALLINCKRODT US, LLC, <br><br> Defendants. | ) ) ) ) ) ) ) ) ) ) ) ) ) )    1:00-cv-00069-JAW |

**ORDER ON MOTION FOR ATTORNEY'S FEES AND COSTS**

After sixteen years of litigation in this major environmental action, the Plaintiffs, having achieved success on numerous significant issues, seek an award of attorney's fees and costs under 42 U.S.C. § 6972. The Court concludes that it has issued final orders and that the Plaintiffs are prevailing parties within the meaning of § 6972(e). The Court applies Maine, not New York, attorney billing rates to the attorney's fee application and it sets those rates. Finally, it concludes that, given the Plaintiffs' voluntary reductions, the stated hours worked are reasonable.

**I.   BACKGROUND**

On April 10, 2000, the Maine People's Alliance and the Natural Resources Defense Council, Inc., (Plaintiffs) filed a citizen suit pursuant to 42 U.S.C. § 6972(a)(1)(B) of the Resource Conservation and Recovery Act (RCRA) against Holtrachem Manufacturing Company, LLC, and Mallinckrodt, Inc. (Mallinckrodt),

seeking a court-ordered remediation plan for tons of mercury that the Defendants discharged into the Penobscot River in Maine during their period of ownership of a chlor-alkali plant located in Orrington, Maine. *Compl.* (ECF No. 1). The Plaintiffs' lawsuit presented a complex array of legal and scientific issues. The case has been thoroughly litigated by exceptionally able counsel for the Plaintiffs and for Mallinckrodt.[1] On December 15, 2015, the Plaintiffs filed a motion for award of attorney's fees and costs for $6,606,211.95, supported by hundreds of pages of documentation. *Pls.' Mot. for Att'y's Fees and Costs* (ECF No. 842) (*Pl.'s Mot.*). On January 25, 2016, Mallinckrodt responded, opposing the motion. *Mallinckrodt US LLC's Opp'n to Pls.' Mot. for Att'y's Fees and Costs* (ECF No. 847) (*Def.'s Opp'n*). On February 17, 2016, the Plaintiffs filed a reply. *Pls.' Reply Mem. in Support of Mot. for Att'y's Fees and Costs* (ECF No. 858) (*Pls.' Reply*).

## II.  THE PARTIES' POSITIONS

### A.  The Plaintiffs' Motion

In their motion, the Plaintiffs argue that they should be considered the prevailing parties under 42 U.S.C. § 6972(e) and are therefore entitled to an attorney's fee award. *Id.* at 10–12.[2] They also contend that the Court's orders of September 2, 2015, and October 16, 2015, are final orders for purposes of a RCRA fee award. *Id.* at 13–14. If not, they say that the Court should award an interim fee. *Id.*

---

[1] In its September 2, 2015 Order on Remediation Plan, the Court commended the lawyers on both sides of the case, stating that they "have greatly assisted the Court by their thorough understanding of the complicated science, their elimination of unnecessary disputes, and their artful oral and written advocacy." *Order on Remediation Plan* at 37 (ECF No. 829) (*Remediation Order*).
[2] The pagination of the parties' filings differs with the ECF pagination. The Court has used the ECF pagination for all the filings.

at 15–17. They also assert that a fee award would be consistent with the purposes of RCRA. *Id.* at 17–19. Lastly, they support the contention that their requested attorney's fee award is reasonable based on the number of billed hours, the hourly rates, and the amount of litigation expense, including expert witness fees. *Id.* at 19–32.

### B. Mallinckrodt's Opposition

Mallinckrodt objects. *Def.'s Opp'n* at 1–26. Noting that Judge Carter had earlier denied an attorney's fee request as premature absent a final order, Mallinckrodt argues that the Plaintiffs' motion continues to be premature because in its view, the statutory requirements for a fee award have not been met. *Id.* at 6–10. Furthermore, Mallinckrodt contends that the Plaintiffs have not prevailed as yet in this litigation. *Id.* at 11–12. Mallinckrodt urges the Court not to issue an interim attorney's fee award because it would be, in its view, inconsistent with the plain language of § 6972(e) and Judge Carter's prior order. *Id.* at 13–15. Attacking the Plaintiffs' attorney's hourly rates as a "New York rate," Mallinckrodt argues that the Plaintiffs should be held to Maine, not New York rates. *Id.* at 15–21. Finally, Mallinckrodt disputes the reasonableness of the hours and expenses, and says that if the Court is inclined to issue an award, it should hold an evidentiary hearing. *Id.* at 21–25.

### C. Plaintiffs' Reply

In reply, the Plaintiffs reassert that they are prevailing parties and cite additional supportive caselaw, that the Court's Orders are final for purposes of a fee

3

award, that the Court could in the alternative award interim fees, that they are entitled to out-of-forum rates, and that reasonable Maine rates are higher than Mallinckrodt suggests. *Pls.' Reply* at 6–16. They also defend their fees and costs as reasonable and say that an evidentiary hearing is unnecessary.[3] *Id.* at 16–19.

## III. DISCUSSION

### A. The RCRA Fee Award Statute: Interim Awards and Prevailing Parties

Section 6972(e) provides:

> The court, in issuing any final order in any action brought pursuant to this section or section 6976 of this title, may award costs of litigation (including reasonable attorney and expert witness fees) to the prevailing or substantially prevailing party, whenever the court determines such an award is appropriate.

The first question under this statute is whether it authorizes an attorney's fee award where, as here, the litigation is ongoing. The Court concludes that § 6972(e) authorizes an award of attorney's fees and costs in the circumstances of this case.

In *Bradley v. School Board of City of Richmond*, 416 U.S. 696 (1974), the United States Supreme Court interpreted a similar, though not identical, attorney's fee provision under the Civil Rights Act as authorizing an attorney's fee award even though the litigation was not over.[4] *Id.* at 722–23. The *Bradley* Court wrote that

---

[3] In their Reply, the Plaintiffs point out that Mallinckrodt has not objected to several important aspects of their attorney's fee motion: requested expert witness fees and costs, fees for the firms of Boies, Schiller & Flexner and Moon, Moss & Shapiro, fees for attorney travel, fees for work on the Plaintiffs' motion, and use of the current rate method to calculate attorney's fees. *Pls.' Reply* at 11. The Court agrees with the Plaintiffs, and it has not addressed those issues in this Order.

[4] In general, although courts have sought to interpret fee-shifting federal statutes consistently, the argument for multiple potential final orders in RCRA is even stronger than in *Bradley*, which was addressing the fee-shifting provision of § 718 of Title VII of the Emergency School Aid Act, 20 U.S.C. § 1617. The *Bradley* Court quoted § 718 as providing for fee-shifting "[u]pon the entry of a final order[.]" *Id.* at n.12. The phrase "any final order" in § 6972(e)—as opposed to "a final order"—suggests

4

"many final orders may issue in the course of the litigation" and "[t]o delay a fee award until the entire litigation is concluded would work substantial hardship on plaintiffs and their counsel, and discourage the institution of actions despite the clear congressional intent to the contrary. . . ." *Id.* at 723.

This conclusion is buttressed by *Rogers v. Okin*, 821 F.2d 22 (1st Cir. 1987), a First Circuit case interpreting the fee-shifting provision of 42 U.S.C. § 1988. In *Rogers*, the First Circuit quoted the Senate Report that described the objective of what was to become § 1988:

> In appropriate circumstances, counsel fees under S. 2278 may be awarded pendente lite. *See Bradley*, [citation omitted]. Such awards are especially appropriate where a party has prevailed on an important matter in the course of litigation, even when he ultimately does not prevail on all issues.

*Id.* at 27 (quoting S. Rep. No. 1011, 94th Cong., 2d Sess., *reprinted in* 1976 Code Cong. & Ad. News 5908, at 5912); *Texas State Teachers Ass'n v. Garland Indep. Sch. Dist.*, 489 U.S. 782, 791 (1989) (stating that a prevailing party includes a party who succeeded on a significant claim "either *pendente lite* or at the conclusion of the litigation").

More recently in 2011, in *Hutchinson v. Patrick*, 636 F.3d 1 (1st Cir. 2011), the First Circuit wrote that "merely winning a battle in an ongoing case will not normally suffice to animate a federal fee-shifting statute." *Id.* at 11. At the same time, the *Hutchinson* Court stated that "[t]his does not mean, however, that a fee award always must await full litigation of a case and the entry of a final judgment." *Id.* at 12. The

---

that there may be more than one final order that entitles a plaintiff to an attorney's fee award in the context of RCRA.

standard is "whether the plaintiffs, at this stage, can be said to have succeeded on significant claims affording them some of the desired relief." *Id.*

The wisdom of the First Circuit's precedent is apparent in this case, where the Plaintiffs' attorneys have been working on this case for more than sixteen years and, despite marked success, have not been paid at all by Mallinckrodt under the fee-shifting provisions of the law. Few private law firms could refrain from billing a client for sixteen years and, even though the Plaintiffs' attorney could theoretically have looked to their clients for payment, few clients have the resources to fund the type of sophisticated litigation this case represents.[5] An interim award is consistent therefore with the public policy underlying the fee-shifting statute, namely to encourage litigation in the public interest.[6]

The Court turns, then, to whether the Plaintiffs are "prevailing parties" within the meaning of the term. In *Texas State Teachers*, the Supreme Court defined the term: "A prevailing party must be one who has succeeded on any significant claim

---

[5] Mallinckrodt urges the Court to conclude that the Natural Resources Defense Council is "a well-funded public interest organization" that was presumably able to pay its attorney employees and its law firms over the years. *Mallinckrodt Opp'n* at 19. But as Mallinckrodt acknowledges, the record is silent as to the details of the Natural Resources Defense Council's financial arrangement with the Maine People's Alliance, the Natural Resources Defense Council lawyers who are employed there, the firm of Boies, Schiller & Flexner, or the firm of Moon, Moss & Shapiro. *Id.* Even if one or both of the Plaintiffs were able to pay lawyers' salaries or bills during the course of the litigation, it is still true that the Plaintiffs did so out of their own resources without the benefit of the fee-shifting provisions of federal law.

[6] The Court acknowledges that on April 20, 2017, Judge Carter issued an order dismissing the Plaintiffs' motion for attorney's fees and costs based on his conclusion that the "case, in its present posture, does not include a 'final order' as that term is understood in federal jurisprudence." *Order Dismissing Pls.' Mot. for Att'y's Fees and Costs* at 2 (ECF No. 356). The Court rarely disagrees with Judge Carter. *See Remediation Order* at 35–36. But rarely does not mean never. However Judge Carter saw his earlier orders, the Court views its Remediation Order and Order for Evaluation of Potential Remedies as final orders within the meaning of § 1988. Furthermore, Judge Carter did not have the benefit of the First Circuit's 2011 *Hutchinson* decision, which approved interim awards of attorney's fees and costs if certain conditions are met. *See Hutchinson*, 636 F.3d at 11–13.

affording it some of the relief sought . . . ." 489 U.S. at 791. In *De Jesús Nazario v. Morris Rodriguez*, 554 F.3d 196 (1st Cir. 2009), the First Circuit refined *Texas State* by writing that "a plaintiff is a prevailing party when the 'actual relief on the merits of his claim materially alters the legal relationship between the parties by modifying [the] defendant's behavior.'" *Id.* at 199 (quoting *Farrar v. Hobby*, 506 U.S. 103, 111–12 (1992)).

In *Hutchinson*, the First Circuit set out two overriding factors to evaluate whether the prevailing party requirement has been satisfied: (1) "a material alteration of the parties' legal relationship has taken place as a result of the litigation"; and (2) "the alteration possesses a judicial imprimatur." 636 F.3d at 8–9 (internal quotation marks omitted).

The Court readily concludes that the Plaintiffs are currently prevailing parties within the meaning of § 6972(e). After all, the Court spent nearly a full month in June 2014 conducting a bench trial, listening to the countervailing testimony of numerous expert witnesses, and issuing a sixty-one page decision. In that decision, the Court ordered the appointment of an engineering firm to develop cost-effective remedies to clean up the remaining mercury in the Penobscot River. *Order on Remediation Plan* at 1–61 (ECF No. 829) (*Remediation Order*). To use a simple example, after this extensive hearing, Mallinckrodt spent over thirty pages in its post-trial brief, arguing that there was no evidence that mercury in the Penobscot River was posing an unacceptable risk to human health or that it was having significantly adverse effects on populations or organisms. *Mallinckrodt US LLC's*

7

*Post-Trial Br.* at 15–46 (ECF No. 815) (*Mallinckrodt Br.*).  The Court rejected that argument, concluding that the "Plaintiffs have demonstrated that the Penobscot River estuary continues to suffer irreparable injury from ongoing mercury contamination caused by Mallinckrodt."  *Remediation Order* at 54.

In addition to arguing that there was no unacceptable risk from mercury in the Penobscot River, Mallinckrodt contended that, if the Court ruled otherwise, it should not allow the engineering firm to consider large-scale dredging or capping as potential remedies and should limit any additional studies to the following: (1) to assess harm to Nelson's sparrows; (2) to quantify the size of the mobile pool and determine its location; (3) to obtain sediment samples from the Orland River; and (4) to monitor the recovery of the Penobscot system.  *Mallinckrodt Br.* at 50–52, 70–71.  Finally, Mallinckrodt urged the Court to allow it, not a court-appointed expert, to perform any additional work.  *Id.* at 71–72.  In its Remediation Order, the Court rejected each of these Mallinckrodt positions.  *Remediation Order* at 57–59.  These orders, in the Court's view, effected "a material alteration of the parties' legal relationship" as a "result of the litigation" and were by their nature the imposition of a judicial imprimatur on that alteration.  *Hutchinson*, 636 F.3d at 8–9.

Based on this analysis, the Court views its Remediation Order and its Order for Evaluation of Potential Remedies as orders in which the Plaintiffs have "prevailed on [] important matter[s] in the course of litigation."  *Rogers*, 821 F.2d at 27; *see Conservation Law Found. v. Patrick*, 767 F. Supp. 2d 244, 249 (D. Mass. 2011).

    **B.**    **New York versus Maine Rates**

Relying in part on the so-called Laffey Matrix, published annually by the U.S. Attorney's Office for the District of Columbia, the Plaintiffs seek the following hourly rates for the individual attorneys who have represented the Plaintiffs: (1) Mitchell S. Bernard, $600; (2) Thomas Cmar, $315; (3) Aaron Colangelo, $504; (4) Rachel Heron, $315; (5) Margaret Hsieh, $325; (6) Lawrence Levine, $315; (7) Nancy Marks, $530 (1998–2013) and $325 (2013–2015); (8) Corinne Schiff, $315; (9) Sarah Tallman, $315; (9) Jared J. Thompson, $325; and (10) Amelia Toledo, $325. *See Pls.' Mot.* Attach. 39, *Current Rates Sought for NRDC Att'ys and Paralegals* at 2. In addition, the Plaintiffs seek the following hourly rates for paralegal work: (1) Scott Pfendler, $154; and (2) Michelle Wu, $154. *Id.* For the initial phase of the case, from 2000 through 2003, the Plaintiffs were also represented by two attorneys at Boies, Schiller & Flexner, a New York law firm: Philippe Z. Selendy, who billed at an hourly rate of $470, and Helen M. Maher, who billed at an hourly rate of $320. *Id.* Attach. 10, *Boies Firm Time Records* at 2. Boies, Schiller & Flexner also employed five support staff who billed at hourly rates between $90 and $110. *Id.* Finally, from February 3, 2000, through January 22, 2007, the Portland Maine law firm of Moon, Moss & Shapiro performed legal services as local counsel on behalf of the Plaintiffs. *Id.* Attach. 11 at 1–17.

Mallinckrodt objected to the out-of-state hourly rates on the ground that reasonable rates are "calculated according to the prevailing market rates in the relevant community." *Mallinckrodt Opp'n* at 15 (quoting *Grendel's Den, Inc. v. Larkin*, 749 F.2d 945, 955 (1st Cir. 1984)). Both the Plaintiffs and Mallinckrodt agree

9

that the general rule is that "[t]he relevant legal market for fixing attorneys' rates is usually the community where the court sits." *Pls.' Mot.* at 23 (citing *Maceira v. Pagan*, 698 F.2d 38, 40 (1st Cir. 1983)).  In the past, courts within the District of Maine have consistently approved hourly rates of roughly $300 for experienced Maine lawyers.  *DeSena v. LePage*, 847 F. Supp. 2d 207 (D. Me. 2012) (opinion of three-judge panel fixing Maine hourly rate for experienced counsel at $295); *IMS Health Corp. v. Schneider*, 901 F. Supp. 2d 172, 195 (D. Me. 2012) ($300); *McDonald v. Scitec, Inc.*, No. BCD-CV-10-37, 2014 Me. Super. LEXIS 13 (Jan. 7, 2014).  However, in *Prescott v. Rumford Hosp.*, No. 2:13-cv-00460-JDL, 2016 U.S. Dist. LEXIS 79170, at *5 (D. Me. Jun. 17, 2016), decided just this June, this Court approved a $300 hourly rate for one attorney and a $350 hourly rate for more experienced counsel.  Based on *Prescott*, the Court accepts $350 as the updated top hourly rate payable in the state of Maine for highly experienced and specialized counsel.

But quoting *Williams v. Poulos*, Nos. 94-2057, 94-2058, 1995 U.S. App. LEXIS 10667, at *11–12 (1st Cir. May 12, 1995), the Plaintiffs claim the First Circuit has recognized an exception to this general rule and that "out-of-town rates may be applied if the complexities of a particular case *require* the particular expertise of non-local counsel, *or* when the case is an undesirable one which capable attorneys within the forum community are not willing to prosecute or defend."  *Pls.' Mot.* at 23 (emphasis in original) (internal punctuation and citation omitted).

The Plaintiffs "do not contend that Maine-based counsel lacked the expertise to bring this case." *Id.* at 24 n.7.  They argue, however, that "no Maine-based counsel

10

would have been willing and able to prosecute this case." *Id*. at 24. They assert that the case required counsel to be able to commit substantial time and resources without any current compensation, and to be willing to prosecute a risky and politically sensitive matter. Additionally, Attorney Bernard, the lead counsel for the Plaintiffs, stated that before preparing the fee application, he spoke with leading environmental practitioners in small, large, and solo practice law firms, and "[e]very one of them told me no one would have done it." *Id*. Attach. 1, *Decl. of Mitchell S. Bernard* ¶ 74. He submitted six sworn declarations from experienced lawyers practicing in Maine to that effect. *Id*. Attachs. 22, 23, 24, 25, 26, and 27.

In response, Mallinckrodt submitted sworn declarations from three prominent Maine lawyers indicating that their law firms would have considered accepting the case in 2000, stating that their law firms are actively involved in pro bono litigation, including environmental litigation, and denying that they would have rejected the case for political considerations. *Mallinckrodt Opp'n* at 16–20.

The Court concludes that Mallinckrodt has the better argument on this issue. In his sworn declaration, the late Attorney Peter DeTroy cites one environmental case in which his law firm represented the Natural Resources Council of Maine on a pro bono basis for ten years opposing the efforts of a national developer to re-zone hundreds of thousands of acres of timberland. *Id*. Attach. 1, *Aff. of Peter J. DeTroy, Esq*. ¶ 3. Despite his affiliation with the state branch of the Natural Resources Defense Council, he states that he does not recall being asked to represent the Plaintiffs in this case. *Id*. Attorney DeTroy's law firm is not alone in its willingness

to accept significant pro bono or reduced fee cases in the public interest. *Id.* Attach. 2, *Aff. of Martha Gaythwaite* ¶ 9. Attorney James Kilbreth's sworn declaration states that his then law firm, Verrill Dana, was willing to take an "occasional large environmental case on a contingency, reduced fee, or pro bono basis" but it "cannot do it often." Pls.' Mot. Attach. 22, *Decl. of James T. Kilbreth in Support of Pl.'s Application for Att'y's Fees* ¶ 7 (*Kilbreth Decl.*).

Some attorneys have opined that their law firms would not have taken the case. *Id.* Attach. 23, *Decl. of Jeffrey A. Thaler* ¶ 4 (*Thaler Decl.*); Attach. 24, *Decl. of Peter J. Brann* ¶ 9 (*Brann Decl.*). But both Attorney Thaler and Attorney Brann carefully phrased their statements. After confirming that his law firm, Bernstein Shur, has "an extensive pro bono practice," Attorney Thaler was precise in saying that his "firm would not have taken this case on a pro bono or contingent fee basis." *Thaler Decl.* ¶¶ 2, 4. Similarly, Attorney Brann confirmed that he had personally handled three law suits for the Natural Resources Council of Maine on a pro bono or reduced fee basis, *Brann Decl.* ¶ 9, but he states that "I am not aware of any law firm in Maine, including Brann & Isaacson, that would have been willing to commit 5,000 hours and $300,000 to litigating this matter <u>on a contingency or *pro bono* basis</u>." *Brann Decl.* ¶ 9 (emphasis supplied). But neither Attorney Thaler nor Attorney Brann states that their law firm would have rejected the case on a reduced fee or other more creative payment basis.

Furthermore, the question in 2000 would not have been whether the Maine law firm would knowingly expend 5,000 hours of uncompensated attorney time and

12

$300,000 of expenses in the proposed litigation. Other than the obvious point that the litigation would be complex, sophisticated, and potentially protracted, neither the Plaintiffs nor the potential law firm could have known the exact amount of time and costs that would have been required. Nor have the Plaintiffs demonstrated that their clients would have been unable to fund the Maine law firm's out-of-pocket costs and some of the legal fees on an ongoing basis.

Having reviewed the submitted affidavits from the Maine attorneys, including the confirmation from both Attorney DeTroy and Attorney Brann that their law firms had in fact represented the Natural Resources Council of Maine in significant environmental litigation, the Court concludes that there would have been law firms in the state of Maine willing to represent the Plaintiffs in this litigation.

The Court also rejects the Plaintiffs' contention that Maine law firms would have shied away from representing the Plaintiffs because the issues may have been politically sensitive. To the contrary, it has been this Court's experience that Maine lawyers are typically willing, sometimes eager, to become involved in cases that have political ramifications at least as great as the potential sensitivities in this case. *See Eves v. Lepage*, No. 1:15-cv-300-GZS, 2016 U.S. Dist. LEXIS 58554 (D. Me. May 3, 2016); *Newton v. Lepage*, 849 F. Supp. 2d 82 (D. Me. 2012), *aff'd* 700 F.3d 595 (1st Cir. 2012).

Having concluded that the *Williams v. Poulos* exception does not apply, the Court turns to the appropriate hourly rate. Here, the Court applies the general rule that local rates are to be used in fee-shifting cases. The Court accepts the *Prescott*

13

determination that, in Maine, a $300 hourly rate applies to most highly experienced counsel and a $350 maximum hourly rate may be applied to exceptionally experienced counsel. *Prescott*, 2016 U.S. Dist. LEXIS 79170, at *5. In Attorney Kilbreth's declaration, he sets forth three tiers of rates: $350 to Attorney Bernard with twenty-eight years of practice; $300 to Attorney Marks with twenty-four; and $250 to Attorney Schiff with nine. *Kilbreth Decl.* ¶ 10. The Court extrapolates from Attorney Kilbreth's sworn declaration that most reasonably experienced attorneys in Maine would charge at $250 per hour, a highly experienced attorney at $300, and an exceptionally experienced attorney at $350.[7]

In *IMS Health Care*, the Court discussed billing by associates within a law firm. 901 F. Supp. 2d at 196–97. The Court concluded that associates should bill at local rates because they do not have experience that could justify an out-of-state rate. *Id.* The Court in *IMS Health Care* determined that $175 was an appropriate rate for associates in Maine. *Id.* at 196.

Applying these principles to the fee application, the Court applies the $350 rate to Attorney Bernard, the $300 rate to Attorney Marks, and $250 to all remaining counsel for the Plaintiffs, except for those attorneys who are associates within a law

---

[7] In his second sworn declaration, Attorney Bernard points out that Attorney Kilbreth's hourly rates were for the year 2007. *Pls.' Reply* Attach. 1, *Second Decl. of Mitchell S. Bernard in Support of Pls.' Mot. for Att'y's Fees and Costs* ¶ 3 (*Second Bernard Decl.*). Attorney Kilbreth's declaration is dated February 8, 2007 and therefore Attorney Banard is correct. *Kilbreth Decl.* ¶ 10. Attorney Bernard then seeks to increase these hourly rates by the increase in the Consumer Price Index Inflation Calculator. *Second Bernard Decl.* ¶ 4.

The Court is not convinced that attorney hourly rates in Maine have increased in accordance with general inflation since 2007. The pressure on the legal profession to reduce fees and to become more efficient is well known as is increased competition in the legal world. Furthermore, the 2007 rates are approximately the same as recent cases in this District dealing with hourly rates for attorneys. Without more, the Court cannot accept Attorney Bernard's calculations.

14

firm or who are the functional equivalent of an associate. For associates, the hourly rate shall be no more than $175.

This leaves the question of the hourly rate for paralegals. The Court accepted $95 as an appropriate hourly rate for paralegals in *DeSena*, 847 F. Supp. 2d at 213–14, and *IMS Health Care*, 901 F. Supp. 2d at 197. As in those cases, the Court accepts $95 as the appropriate maximum hourly rate for paralegals.

### C. Reasonableness of Hours Billed

Mallinckrodt also objected to the reasonableness of the hours actually billed. *Mallinckrodt Opp'n* at 21–24. Mallinckrodt argues that some of the time is generic and inadequately documented, some reflects non-attorney work, some involves duplicate billing (one lawyer within a firm speaking to another), and some reveals overstaffing. *Id.*

In response, the Plaintiffs pointed out that there were 7,305 time entries in their Natural Resources Defense Council billing records and that Mallinckrodt specifically challenged only 108 entries. *Pls.' Reply* at 17. Moreover, the Plaintiffs point out that these 108 contested entries account for 686.1 hours, which Attorney Bernard had voluntarily reduced through specific billing judgments and across-the-board percentage reductions to 431.8 hours, a reduction of 37.1%. *Second Bernard Decl.* ¶ 20. In addition, the Plaintiffs note that they generally reduced the number of hours billed by fifteen percent through January 2007. *Id.* ¶ 22.

The *Buckhannon* Court observed that "[a] request for attorney's fees should not result in a second major litigation." *Buckhannon Bd. & Care Home, Inc. v. W.*

*Virginia Dep't of Health & Human Res.*, 532 U.S. 598, 609 (2001) (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983)). In the Court's view, even though Mallinckrodt has raised legitimate concerns about block billing, conferences among co-counsel, non-attorney work, and generic descriptions, the Court concludes that the Plaintiffs' voluntary across-the-board percentage reductions offset any specific objections. For the same reason, the Court rejects Mallinckrodt's request that the Court hold an evidentiary hearing on the reasonableness of the Plaintiffs' bill. *Id.*

## IV.   CONCLUSION

The Court GRANTS in part and DENIES in part Plaintiffs' Motion for Attorney's Fees and Costs (ECF No. 842). Rather than order a specific figure, the Court charges the attorneys to attempt to arrive at an agreed-upon figure in accordance with the conclusions in this Order. In the event the parties are unable to arrive at an agreement, they are free to return to the Court for clarification regarding any specific remaining dispute.

SO ORDERED.

/s/ John A. Woodcock, Jr.
JOHN A. WOODCOCK, JR.
UNITED STATES DISTRICT JUDGE

Dated this 30th day of September, 2016